222 So.2d 141 (1969)
Judy Ann GORDON
v.
STATE of Mississippi.
No. 45344.
Supreme Court of Mississippi.
April 14, 1969.
Evans & Sykes, Gulfport, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Judy Ann Gordon was indicted along with James Alva Bennett and Joel L. Baker for the armed robbery of a branch bank at a shopping center located between Gulfport and Biloxi in Harrison County. A separate trial was had for this appellant and she was found guilty and sentenced to the Mississippi State Penitentiary for a term of ten years. We affirm.
On January 25, 1968, James Alva Bennett approached a teller of the Edgewater Plaza Branch of the Gulf National Bank on the pretext of purchasing travelers checks. When the teller turned around with the checks, she discovered Bennett holding a gun and demanding her money. Having cleaned out her cage Bennett turned and calmly walked from the building toward the shopping center parking lot. The teller immediately reported the robbery and the description of Bennett to her superiors who alerted the police. Mrs. Jean Galloway, a secretary in the bank, ran to her car and set off in pursuit of the robber, *142 still on foot. From the description given her she recognized a man walking through the parking lot of the adjacent shopping center and followed him. He entered a Chevrolet convertible, climbed over into the back seat and disappeared. Mrs. Galloway parked her car and waited nearby on a virtual "stake out." Presently she observed the appellant and Joel L. Baker emerge from one of the stores and approach the Chevrolet. She recognized the appellant as a customer of the branch bank. Appellant and Baker got into the car and drove off with Baker driving. Mrs. Galloway returned to the branch bank and gave descriptions of the appellant, Baker and the car, also giving the license number of the vehicle.
Not only had the bank robbers been unfortunate in choosing a bank employing the conscientious, brave and alert, Mrs. Galloway, they had also chosen a fantastically inopportune time for the commission of their felony. On that same day a District Highway Patrol meeting had been called and all of the highway patrolmen in South Mississippi were converging on the Gulfport area.
As soon as Mrs. Galloway returned to the bank descriptions of the subjects and the car with its tag number were put out over the radio network. Within minutes one of the highway patrol units spotted the car coming off Back Bay Bridge. This unit followed the car until it was stopped at a road block on Howard Street. This street is one of the main business streets in Biloxi. Appellant and Baker were immediately arrested and taken from the car. They were informed of the reason for their arrest and warned that anything they said could be used against them. The arresting officers did not see Bennett at this time but when one of the officers made a closer examination of the rear seat of the car, he saw the light reflecting on an object in the trunk of the car. The officer pulled back a curtain in the rear of the car and discovered Bennett hiding in the trunk. The car was a Chevrolet convertible and there was a well into which the top will fold when it is down. Evidently the upholstery had been cut so that a person could enter the trunk of the car from the rear seat and a curtain then pulled down to conceal this opening. After some urging Bennett was convinced to come out of the car. He was arrested and when searched the money taken from the bank was found concealed inside his shirt. Only a limited search of the car was made at the scene of the arrest, but the officers took charge of the car and one of the officers drove it to the highway patrol headquarters some distance from the scene of the arrest. The persons arrested were also taken to the highway patrol headquarters. Within a few minutes after the automobile reached the patrol headquarters it was thoroughly searched by a criminal investigator for the highway patrol and a member of the FBI. All contents of the car were inventoried and stored in the evidence locker at the patrol headquarters. Found in the car were the personal effects of the three persons arrested. A pistol and a box containing the American Express travelers checks which had been taken from the bank were also found in the trunk of the car. When appellant's purse which was found in the car was searched it was found to contain documents of identification of Bennett and Baker. The gun, travelers checks and the documents of identification belonging to Bennett and Baker were admitted into evidence over the objection of the appellant.
Appellant's assignment of error is as follows:
I.
The Court below erred in admitting the alleged confession of the Defendant.
II.
The Court below erred in overruling Defendant's motion to quash the indictment.

*143 III.
The Court below erred in overruling Defendant's motion to suppress evidence obtained in the search of the vehicle in which the Defendant was riding.
IV.
The Court below erred in overruling Defendant's motion for a directed verdict.
V.
The Court below erred in overruling Defendant's motion for a new trial.
VI.
The Court below erred in failing to grant Defendant's instruction.
We find no merit in the Assignment of Error relative to the admission of the confession of the appellant. Before the confession was admitted into evidence the trial court conducted a full preliminary hearing out of the presence of the jury. The evidence reflected that appellant was carried to an interrogation room where she was questioned by an agent of the FBI and an officer of the highway patrol. The FBI agent testified that before she was asked any questions he warned the appellant of her constitutional rights by reading from the FBI form entitled, "Your Rights", which is set out as follows:
 YOUR RIGHTS
 Place,
 Time,
 Date
Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
WAIVER OF RIGHTS
I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
 Signed
 Witnesses signatures
After the agent read the above form to appellant, he handed it to her and allowed her time to read it herself. The appellant indicated that she understood her rights and signed the waiver. She then proceeded to give a statement, but before she had finished she indicated that it was untrue and began again. The final statement which was read into evidence over the objection of the appellant admitted knowing of and participating in the robbery of the branch bank. The first partial statement that was repudiated was also read into evidence.
The trial judge found that the appellant was fully informed of and understood her constitutional rights and that she made the statement freely and voluntarily. The evidence in the record supports this finding. In fact, there is nothing in the record to indicate otherwise. We hold that the confession was properly admitted into evidence.
*144 There is no merit in appellant's assignment of error relative to the overruling of her motion to quash the indictment. The thrust of this assignment is that women were excluded from the jury by statute. This argument has been foreclosed against appellant by our decision in several cases. State v. Hall, 187 So.2d 861 (Miss. 1966); White v. State, 214 So.2d 467 (Miss. 1968). The jury for the term of court at which appellant was tried was drawn prior to the date that the amendment to Section 1762, Mississippi Code 1942 Annotated (1956) became effective on June 14, 1968, allowing women to serve on juries. Under these circumstances there was no error in the overruling of the motion to quash the indictment.
The third assignment of error is based upon the search of the automobile at the highway patrol headquarters after it had been moved from the scene of the arrest. Appellant concedes that the officers had probable cause to arrest the occupants of the car and to search the vehicle at the place where they were arrested, but objects to the search of the car without a search warrant at the patrol headquarters at a time when the three persons who were arrested were not present. Appellant cites and relies upon May v. State, 199 So.2d 635 (Miss. 1967). However, this case is clearly distinguishable on the facts. The automobile seized by the officers was used by the appellant and her confederates in carrying out the crime. The officers knew at the time they seized the car that it had been used not only as a conveyance in carrying out the crime but also knew that it was designed so that the person who held the gun on the bank teller and took the money and travelers checks could use it as a means of concealment. In other words the automobile itself was an integral part of the evidence of the crime committed. Under these circumstances it was the duty of the officers not only to seize the car but to preserve it as evidence. In doing so, of course, they had to inventory and preserve the contents thereof. Even assuming that the search was not incident to the arrest and that appellant had standing to raise the question, we find that the search was reasonable in keeping with the provisions of Article 3, Section 23, Mississippi Constitution (1890) and the provisions of the Fourth Amendment to the Constitution of the United States. An important element in determining whether the search here was reasonable is the reason and purpose of the police taking the automobile into custody. It was not being done for the convenience of appellant or the other participants in the crime. The purpose was to preserve an integral part of the evidence. Since it was the duty of the officers to hold the automobile as evidence until the participants could be indicted and tried, it would be unreasonable to hold that for their own protection the officers did not have the duty to search the automobile. They were responsible for all the contents of the car and in order to properly account for such contents they had to inventory and preserve them. Appellant urges that the officers could have procured a search warrant and searched the car after it was moved to the patrol headquarters, however, that is not the test. The test is whether the search was reasonable. As a means of precaution it is always better for the officers to procure a search warrant for the search after the arrest has been effected and the vehicle moved from the scene of the arrest, but under the facts and circumstances of this case a search without a search warrant was reasonable. In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court of the United States pointed out that whether a search and seizure is reasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. The Court also recognized, as we do, that a search of a car without a warrant might be reasonable although a search of a home or other fixed property would not be reasonable under similar circumstances. We think the facts in this case clearly distinguish it from Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, *145 11 L.Ed.2d 777 (1964) and that the rule announced there does not apply. The subsequent search of the car here was so closely related to the reason appellant was arrested and the reason the car was impounded and retained by the officers that it would be unreasonable to hold that the search was not reasonable.
Furthermore, even if it could be said that the search of the automobile at patrol headquarters should not have been made without a search warrant it is clear beyond a reasonable doubt that the result would have not been changed had the evidence been excluded. The existing evidence was merely accumulatd by the introduction of the assorted identification belonging to both Baker and Bennett which had been seized from appellant's purse. It was introduced to show appellant's prior association with them. This fact was clearly established by their arrest together and the evidence of their cohabitation in the same room at a motel for several days prior to the robbery. The gun and travelers checks found in the trunk were merely cumulative of the existing evidence of the money from the bank which was properly taken from the person of Bennett incident to the arrest. Moreover, in this case we have the confession of the appellant which was freely and voluntarily made after being fully advised as to her "Miranda" rights. Under these circumstances it is clear beyond a reasonable doubt that if the introduction of this evidence was error, it was harmless error.
We have carefully considered the other errors assigned and find them to be without merit. The record in this case is remarkably free of error and the evidence establishing appellant's guilt is clear and convincing beyond any reasonable doubt. Therefore this case should be and is affirmed.
Affirmed.
GILLESPIE, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.