241 So.2d 657 (1970)
Charles Henry KENT
v.
STATE of Mississippi.
No. 46102.
Supreme Court of Mississippi.
December 7, 1970.
*658 Sandy R. King, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Velia Ann Mayer, Special Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
This is an appeal from the Circuit Court of Montgomery County, Mississippi, wherein the appellant, Charles Henry Kent, was indicted, tried and convicted of willfully, unlawfully, feloniously and intentionally shooting or discharging a rifle or firearm into the dwelling house of John Little on December 11, 1969, at the time the house was occupied by John Little and his family. Appellant was sentenced to serve a term of one year in the Mississippi State Penitentiary. From that verdict this appeal is taken.
The record in this cause discloses that the appellant was the former husband of John Little's wife and that the former Mrs. Kent had been granted the custody of all three of the appellant's children. It appears from the record that there was considerable animosity between the appellant and John Little which had resulted in several confrontations, none of which had actually developed into physical violence, though the high sheriff had to be summoned on one occasion.
There were no eye witnesses to the alleged offense. Lacking also was any physical evidence directly connecting the appellant with the act of shooting. Only ill feelings previously exhibited by the appellant against John Little and his family were shown.
The shooting took place between the hours of 9:30 and 10:00 o'clock p.m. on December 11, 1969, at the residence of John Little, which is situated some several miles east of the city of Winona, Mississippi. The occupants of the residence heard three shots, one of which entered the residence through a window, penetrated a closet door and lodged in some sheets in the closet. Another was found in the side of an oak tree in the yard of the residence, but the third was not found. At about 1:00 o'clock in the morning, the Sheriff of Montgomery County, with a warrant for the arrest of the appellant, issued by a justice of the peace upon an affidavit made by John Little, went to Vaiden in Carroll County, Mississippi, together with Mr. R.W. Miller, the Deputy Sheriff of Carroll County. They located the appellant in a cafe near Vaiden, Mississippi. The appellant was arrested by the Carroll County Deputy Sheriff while he was sitting at a table in the cafe, and was delivered into the custody of the Sheriff of Montgomery County.
Immediately after the arrest, the Sheriff of Montgomery County left the appellant in the cafe and together with the deputy sheriff went to the parking space located at the rear of the cafe. Without a search warrant, R.W. Miller searched the appellant's pickup truck and took therefrom a Remington Nylon 66 Twenty-two Automatic Rifle which had been placed on a gun rack over the back seat of the truck. The sheriff then went back into the cafe where the appellant had remained seated at the table and took the appellant to the Montgomery County Jail, where he was incarcerated for the night.
The following morning, while the appellant was still in jail, the Sheriff of Montgomery County went back to the appellant's truck which had remained locked up behind the cafe in Carroll County and again without a search warrant searched the truck and found on the floor opposite the driver's side three 22-caliber cartridge hulls which had been fired.
The rifle along with the two retrieved bullets taken from the tree and the house, together with the three fired cartridge hulls, were sent to Mr. William Donald Ates, a ballistics expert at the Highway Patrol Laboratory in Jackson. The ballistics expert testified emphatically that the three cartridge hulls had been fired from the 22-caliber Remington Nylon 66 Automatic Rifle which had been delivered to him because the firing pin marks on the base of *659 the 22-caliber shells, or cartridge hulls, matched the imprint made by the firing pin of the rifle. However, when asked whether or not the bullets were fired from this weapon, the ballistics expert answered:
Thus bullet, from the rifling marks on it  I do not want the jury to misunderstand me in this  so I am going to state that the individual characteristics could not be matched to that weapon, but the rifling characteristics of this bullet show that it was fired from a gun of that manufacturer. (Emphasis added.)
Further, when asked whether the bullet had been fired from a Remington gun of the same make and model, the ballistics expert said: "Not of the same model but the same make." This testimony eliminates this particular rifle.
The appellant testified that the afternoon before he was arrested he had shot at and killed on the third shot a "big ole rabbit hawk" or "chicken hawk" in a black locust tree; that he often shot from the cab of his truck at "hawks, foxes and some dogs that were killing calves." He further testified that between 9:00 and 10:00 o'clock on the night of the shooting he was with one Clinton Yates and that they were looking for a friend of his who had by accident driven off with the appellant's 38-caliber Smith & Wesson revolver which was left on the hood of his truck; that they went by Mrs. Frances Meek's home and, after leaving there, went four or four and a half miles to the friend's home, whereupon the friend left him, and the appellant returned to Mrs. Meek's home. He stated that from 9:30 p.m., the middle of the "Dean Martin Show," until the end of the news broadcast, he was watching TV with Mrs. Meek and that at the end of the news he drove to Vaiden, Mississippi. Mrs. Meek verified this testimony. In Vaiden he took Mr. Nixon to supper after Mr. Nixon had closed his cafe about 11:00 o'clock p.m. Subsequently, he and Mr. Nixon returned to the cafe where at 1:00 o'clock the appellant was arrested.
These factual issues were submitted to a jury which returned a verdict of guilty, whereupon the judge sentenced the appellant to one year in the Mississippi State Penitentiary. From that verdict this appeal is taken.
Several errors are assigned. We will discuss those which merit consideration. The first error assigned is that the court erred in overruling appellant's objections and motions to exclude and strike the state's evidence with reference to a rifle and cartridge hulls seized by the officers from the closed cab of the appellant's pickup truck by unlawful searches and seizures. A warrant for the arrest of the appellant was properly issued by the Justice of the Peace of Montgomery County and served upon the appellant by Deputy Sheriff R.W. Miller. There was a valid arrest of the appellant. The testimony and the record disclose that the rifle was discovered not by a search of appellant's truck for the reason that the rifle could be seen resting on the gun rack in the appellant's truck through the windows thereof. The sheriff testified further that "I knew from the observation who made the rifle and what type of gun it was." He also testified that he knew the caliber of the gun. No trespass was committed in this case because the eye cannot commit a trespass. The seizure of the rifle under these circumstances has been sanctioned by this Court and other courts of this country. Authorities in support of this rule are numerous, among which are the following: Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Davis v. United States, 409 F.2d 1095 (5th Cir.1969); Nobles v. State, Miss., 241 So.2d 826, decided this date; McCollum v. State, 197 So.2d 252 (Miss. 1967); Wilson v. State, 186 So.2d 208 (Miss. 1966); Craft v. State, 254 Miss. 413, 181 So.2d 140 (1965); Bone v. State, 207 Miss. 868, 43 So.2d 571 (1949); and Goodman v. State, 158 Miss. 269, 130 So. 285 (1930).
*660 It is apparent, therefore, that the seizure of the rifle belonging to the appellant, lying in open view, did not constitute an illegal search as urged by the appellant in the assignment now being considered. The search, however, by the sheriff on the following day without a search warrant and the obtaining of the three empty cartridge hulls was an unlawful search, and testimony with reference thereto was improperly admitted because an automobile under such facts as exist here is in the status of a house. United States v. Greer, 297 F. Supp. 1265 (N.D.Miss. 1969); Nobles v. State, supra; May v. State, 199 So.2d 635 (Miss. 1967). See also Davis v. United States, supra.
Our determination that this search under these circumstances and the illegal evidence obtained therefrom do not vitiate or modify the decision relating to the search and admissibility of evidence in Nobles v. State, supra, or in Gordon v. State, 222 So.2d 141 (Miss. 1969), for the reason that in this case the truck was not in evidence in itself. Material factual differences in the Nobles and in the Gordon cases relating to the vehicles also distinguish them from the case at bar.
The brief of the appellant was filed in this Court on August 12, 1970. On October 5, with approval of this Court, a motion to amend the assignment of errors so as to add thereto the granting by the lower court of the state's instruction No. 6, was authorized. This instruction No. 6 granted to the state provides as follows:
The Court instructs the Jury for the State that you do not have to know that the defendant is guilty of the crime charged in the indictment before you would be warranted in convicting him; all that the law requires is that you must believe from the evidence, beyond a reasonable doubt, that he is guilty of the crime charged, and if you so believe, then it would be your sworn duty to find the defendant guilty as charged.
It is not essential for us to consider the error urged in the granting of this instruction for the reason that this case must be reversed and decided on other issues. However, the granting of this instruction constitutes reversible error under our former interpretation of this rule of law as set forth in McGill v. State, 235 So.2d 451 (Miss. 1970); Pieratt v. State, 235 So.2d 923 (Miss. 1970); and Carroll v. State, 215 So.2d 871 (Miss. 1968). In these cases we stated that the granting of this instruction could constitute reversible error and we hold in this instance that it does constitute reversible error. As we stated in Pryor v. State, 239 So.2d 911 (Miss. 1970), so we have here: "[A] good example of the unfairness of this instruction since it is now being used in a circumstantial evidence case."
Considering now the third error urged by the appellant, namely, that the court erred in failing to give appellant the tendered written peremptory instruction of not guilty at the close of the evidence in this cause, which is the ground upon which this decision is primarily based, we find that there is no direct evidence whatsoever that the appellant, using the gun offered in evidence, fired three shots therefrom, one of which went through the window of the home of the state's prosecuting witness, Mr. John Little. The proof at best establishes merely suspicion that the defendant was guilty. This suspicion moreover is predicated on asserted threats formerly made by the appellant against Mr. John Little. The suspicion is further grounded on the fact that two bullets were fired from a Remington Nylon 66 22-caliber Automatic Rifle. However, the proof completely fails to show that the two bullets were fired from the Remington Nylon 66 22-caliber Rifle which was owned by the appellant. The testimony of the ballistics expert, Mr. William Donald Ates, conclusively shows that there is no proof that the bullets which were found in the tree and in the house were actually fired from *661 appellant's Remington Nylon 66 22-caliber Automatic Rifle. The state wholly failed to meet the burden of proof requisite in this case.
For the foregoing reasons, the judgment of the Circuit Court of Montgomery County is reversed and the appellant is discharged.
Reversed and appellant discharged.
ETHRIDGE, C.J., and RODGERS, JONES and INZER, JJ., concur.