[Crim. No. 4083. Fourth Dist., Div. Two. Jan. 14, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT C. PERALEZ, Defendant and Appellant.

**COUNSEL**

Herbert A. Moss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lazubir L. Butler, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**GABBERT, J.**—By information filed by the District Attorney of Orange County, appellant and Dolores Hernandez, who is not an appellant herein, were charged with burglary with intent to commit larceny. (Pen. Code, § 459.) Additionally, appellant was charged with a prior conviction of first degree robbery occurring in February 1955. Appellant entered a plea of not guilty and denied the prior conviction. After a trial by jury, appellant

and the codefendant were found guilty of burglary. The prior conviction for robbery charged against the appellant was found to be true. He was denied probation and sentenced to state prison for the term prescribed by law. Appellant filed a timely notice of appeal from the judgment of conviction.

## Facts[1]

Mr. and Mrs. Robert Hall, residents of Seal Beach, were the next door neighbors of Mrs. Nancy Tyler, the victim of the charged burglary. On August 3, 1969, the date of the burglary, Mrs. Tyler was not at home. At approximately 11:30 p.m. the Halls were awakened by the barking of their dog. Mr. Hall heard a noise coming from the Tyler house, which he described as the sound of "metal popping." Looking from his bedroom window toward the Tyler house, he was unable to observe any activity. Mr. Hall telephoned the police to inform them of what he had heard. He again looked from his window toward the Tyler home and observed a man in the back portion of the Tyler house and again heard the sound previously described. The man disappeared around the back corner of the house out of Mr. Hall's line of sight.

After this observation, Mr. Hall again called the police to report a man in the vicinity of the Tyler house. After this telephone call Mr. Hall observed the man walking from behind the Tyler house toward the street carrying a portable television set to a car parked in front of the Tyler house. Although the witness did not actually see the man place the television in the car, he did hear the car door open and shut.

Mr. Hall went outside and observed a police car parked directly in front of his home and a car parked in front of the Tyler house. The latter car pulled away from the curb, proceeded down the street and was immediately followed by the police car with an activated red light. A few minutes later another police car passed in front of Mr. Hall's house in the direction of the first two cars. Mr. Hall then returned inside his home and placed a third call to the police station, informing the police he had observed the man he had reported in the vicinity of the Tyler house leave with a portable television set. Mr. Hall was unable to identify the man he had seen.

Officer Edward Wood of the Seal Beach Police Department, while on patrol during this same period of time, received a call to proceed to the Tyler residence to investigate a possible prowler on the premises. When the officer arrived at the scene he parked in front of the Hall house. As he

---

[1]Since the codefendant Hernandez is not an appellant the testimony in the record relevant only to her case will not be discussed.

arrived and stopped, a car which had been parked in front of the Tyler residence pulled away and proceeded down the street. The officer followed the car activating his red light; he stopped the car approximately a block from the Tyler residence.

After stopping the car the officer approached it from the driver's side and asked the driver to get out. At trial, he identified the driver of the car as the appellant. He asked for identification and while appellant was retrieving a driver's license from the glove compartment a second officer, Michael Vasquez, arrived at the scene. Officer Vasquez was also responding to a prowler call at the Tyler residence.

The appellant showed the officers his driver's license which showed he did not live in the vicinity. When asked by the officers what he was doing in the area, appellant replied he was seeking employment as a landscaper. When asked by the officer why he was looking for employment at such a late hour of the night he stated he worked days and this was the only time he had available to seek such employment.

During the conversation with appellant a call for the officers was received over the loudspeakers of their police units. Officer Vasquez returned to his unit to take the call. He was then informed Mr. Hall had called the police station a third time stating he had observed the man who had been on the Tyler premises leaving with a portable television set. Officer Vasquez returned to appellant's car and upon glancing through the window on the passenger's side of the front seat observed a television sitting on the floorboard.

Officer Vasquez then arrested appellant for suspicion of burglary. The appellant was handcuffed and placed in a police unit. The officers then conducted a search of the car and found a tire iron. The tire iron and the television set were seized by the officers and introduced at trial over the objection of appellant.

Officer Wood testified he had no knowledge of the fact the man Mr. Hall had seen leave the Tyler house was carrying a television set until after appellant was arrested by Officer Vasquez. Officer Vasquez had no knowledge of the television set until he received the communication over the police radio. Mrs. Tyler identified the television seized by the officers as a set which was missing from her home when she returned on August 4.

Officer Wilbert Anderson, who qualified as an expert in identification of tool marks, testified castings made with the tire iron found in appellant's car matched the marks found on the damaged sliding door of the Tyler home. Officer Robert Cone testified to taking the fingerprints and photograph of appellant during the booking procedure at the police station

following his arrest. The photo and the booking slip containing the fingerprints were introduced into evidence over the objection of appellant. A fingerprint expert testified the prints on the record of the prior conviction matched the prints taken of the appellant as they appeared on the booking slip. A certified copy of the 1955 robbery conviction of appellant, charged in the information, was introduced into evidence without objection.

Appellant was the sole witness for the defense. He testified during the evening of August 3 he had been drinking in several bars in the Garden Grove area. During the evening he met a man he could identify only as "Frank." Frank indicated to the appellant he wanted to go to Seal Beach and both men left Garden Grove in appellant's car. During the course of the trip Frank apparently took over the driving while appellant napped.

When appellant awakened, he testified the car was parked in front of a house in Seal Beach. Frank stated he wanted to get some things from the house and left the car. Appellant exited the car and was standing in the immediate vicinity when Frank returned carrying something which appeared to appellant to be a suitcase. He placed the item in the car and returned to the rear of the house. Appellant got back in the car as a police unit drove up and parked in front of the house next door. Appellant stated since he had been drinking, he was afraid of being found by the police in a drunken condition and drove away.

As appellant drove off he observed the police car following him. He pulled over and was approached by an officer he identified as Officer Wood. Appellant then testified substantially in the same way as the two officers who had previously testified concerning the events occurring after appellant had been halted by the police.

On appeal, appellant raises six issues: (1) the appellant did not receive a fair trial because of the bias and prejudice of the trial court; (2) the evidence introduced at trial was obtained as a result of an illegal search and seizure; (3) the trial court committed error in allowing the introduction of a photograph taken of appellant at the time of his arrest; (4) appellant was not adequately represented by counsel; (5) the trial court erred by admitting evidence of a prior conviction; and (6) there is insufficient evidence to support the conviction.

### Alleged Bias of the Trial Court

Prior to the opening session of the trial, appellant's counsel pointed out to the court that the record of the prior conviction of robbery in 1955, charged in the information, indicated at the time of that conviction the

judge presiding in the present action was the district attorney of the county. Appellant's counsel did not move to disqualify the judge, but stated, "Mr. Peralez, on the basis of that [appearance of judge's name on prior conviction] alone objected to the trial proceeding in this court and on that basis moves for a continuance and would request that the continuance go into the month of January."

It is conceded by appellant's counsel the record of conviction does not indicate whether or not the trial judge appeared as the district attorney at the time a plea of guilty was entered. Trial counsel stated the mere presence of the judge's name on the conviction record was the basis for the motion for continuance.

Appellant's contention of error is without merit. First, it does not appear appellant made a motion to disqualify the judge, nor was a written affidavit filed setting out the facts upon which a disqualification could be based. (See Code Civ. Proc., § 170, subd. 5.) Second, appellant's assertion that the trial judge was the district attorney at the time of the prior conviction and was thus biased and prejudiced against appellant is not supportable as conclusive of bias or prejudice which would require a disqualification pursuant to Code of Civil Procedure, section 170, subdivision 5. Appellant cites the case of *Evans* v. *Superior Court,* 107 Cal.App. 372 [290 P. 662], to support the proposition that if the judge was in the least bit associated with the prior conviction his impartiality is destroyed. He asserts this is especially true because the prior conviction was at issue in the present case and required the judge to rule concerning a matter with which he had previously been involved. Quite clearly *Evans* does not hold that any association of a trial judge, however slight, with a prior conviction, destroys his impartiality as a matter of law to hear a case in which a prior conviction is at issue. In fact, the *Evans* case suggests the test of the impartiality of a judge is whether the particular facts of the case would lead a reasonable person to conclude that the judge would be incapable of conducting a fair trial. The facts in the present case do not lend themselves to the conclusion the judge was biased or unfair towards appellant because of his previous limited contact with a case concerning him. There is nothing in the record showing the judge had actively participated in the prior case.

█ Finally, it may not reasonably be concluded the trial judge had an obligation to disqualify himself in the present action pursuant to Code of Civil Procedure section 170, subdivision 4. This section requires the disqualification of a judge who in any previous action or proceeding, involving the same issues, was the counsel for any party or had been retained as an attorney for any party, within two years prior to the commencement

of the pending action. This section does not require the disqualification of a judge when there is no indication of any actual participation in the previous action, as is the case here. (See *People* v. *Bryan,* 3 Cal.App.3d 327 [83 Cal.Rptr. 291].)

Appellant does not cite any testimony in the record which demonstrates the trial court's hostility, prejudice, or bias towards the appellant during the course of the trial. Nor, in fact, does a reading of the transcript disclose the slightest hostility or bias on the part of the trial court. It would seem unreasonable to establish, as a rule of law, that a trial judge must disqualify himself in any criminal case in which the defendant had been previously convicted of a crime during a period of time when such judge was the district attorney of a county in which the prior conviction was had. Literally hundreds of convictions may be rendered in cases as to which the district attorney has no personal knowledge.

### Legality of Search and Seizure

Appellant argues that the search and seizure of evidence introduced against him at trial was improper because it was based on an illegal arrest made without probable cause. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706].) Appellant claims the officers had no reason to stop him and search his vehicle insofar as he had not been seen leaving the Tyler premises, nor had he committed any traffic violations observed by the officers. Appellant contends his arrest was based solely on the fact the vehicle was in the vicinity where a burglary had recently occurred.

Appellant's contention of error lacks merit.

Circumstances short of probable cause to arrest an individual may justify the stopping of a motorist by the police for questioning. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) In the present case Officer Wood had received information of a possible prowler at a given address. When he arrived he observed a car pulling away from in front of the residence where the alleged prowler had been seen. He stopped the car a short distance away and asked for identification. Although at the time of the stopping he had no cause to arrest appellant for trespass, burglary or any other crime, it was proper under the circumstances to detain the appellant and question him concerning his presence in the area where a suspected prowler had been reported. Conceivably, the appellant could have asserted and proved to the officer he was indeed a resident of the premises or was visiting the resident. However, he presented a driver's license which indicated he did not live in the area and gave a rather unusual explanation for his presence in the

area at such a late hour. The detention of appellant in view of the hour of the night and the answers he had given concerning his reasons for being in the area was not unreasonable in scope as was the case in *People* v. *Lingo,* 3 Cal.App.3d 661 [83 Cal.Rptr. 755], cited by appellant.

While lawfully detaining the appellant the police received further information to the effect the prowler had been seen leaving the premises with a portable television. The officer then returned to appellant's car and saw the television in plain view. At that time probable cause existed to arrest the appellant for burglary. (See *People* v. *Berry,* 260 Cal.App.2d 654 [67 Cal.Rptr. 315].) The immediate search of appellant's vehicle, following the arrest based on probable cause, was valid and the evidence seized therein was properly admitted at trial.

### The Photograph Taken of Appellant at the Time of His Arrest

■ Appellant contends the photograph taken at the time of his arrest was totally immaterial because there was no question as to the identification of the appellant. The photograph was not included in the record on appeal. The record, however, indicates it was part of the usual police fingerprint and identity record. The photograph was used to establish the identity of the person from whom fingerprints had been taken. The photograph was relevant to the identity of the appellant because of the change in his appearance between the time of booking and the time of trial. The probative value of the photograph was a matter addressed to the sound discretion of the trial court. Its use did not, in view of the overwhelming evidence of the appellant's guilt, show any abuse of discretion or that such introduction was prejudicial. (*People* v. *Stanworth,* 71 Cal.2d 820, 838 [80 Cal.Rptr. 49, 457 P.2d 889].)

### Adequacy of Counsel

■ Appellant asserts he was not adequately represented by counsel at the trial. He makes several allegations of counsel's inadequacy, including the failure of counsel to follow appellant's direction and the failure of counsel to have proper instructions given to the jury. Appellant does not cite any specific portion of the record which would support these allegations.

A reading of the record as a whole indicates more than adequate representation by the public defender appointed to represent appellant. There was extensive cross-examination of the prosecution's witnesses. Counsel was apparently well aware of the necessity of making a record for the purpose of appeal and raised specific objections to the introduction of the evidence presented at trial. ■ Mere disagreement between a client and

his counsel over tactical matters does not indicate incompetency of counsel. (See *People* v. *Williams,* 2 Cal.3d 894, 904 [88 Cal.Rptr. 208, 471 P.2d 1008].) ■ To justify a reversal on the grounds of inadequacy of counsel it is incumbent upon an appellant to prove his trial was reduced to a farce or a sham by the inability of his counsel. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Appellant has not met this burden of proof.

### Admissibility of Prior Conviction

■ Appellant contends evidence of his prior conviction for robbery in 1955, as charged in the information, was inadmissible because it was based on a plea of guilty which was not voluntary because of coercion by the police. Appellant does not attack the sufficiency of the evidence to establish the fact of prior conviction, he attacks only the admissibility of that evidence.

In the instant case the appellant did, or failed to do, the following: When the prior conviction was discussed at the commencement of the trial he raised no constitutional objection to its introduction in evidence. When evidence of the prior conviction was introduced by the People, he made no objection. Defense counsel, when making a motion to suppress evidence, stated with reference to the certified copy of the prior conviction—"Number 9, no comment." After appellant admitted the former plea of guilty and claimed the plea was coerced, appellant's counsel submitted an instruction asking the jury to determine the voluntariness of the prior plea of guilty. There was no objection by appellant, express or implied, to the testimony offered by the People and there was an actual request by appellant for the court to instruct the jury so as to follow the procedure adopted by appellant.

The respondent questions the propriety of appellant's attack on the admissibility of the prior conviction because no objection to the admissibility of the prior conviction was made at trial. Respondent cites, among other cases, *People* v. *Curtis,* 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], to support the contention there must be an objection to the admissibility of the prior conviction in order to raise the issue on appeal. In *Curtis* the defendant was charged with a prior conviction which he claimed was invalid because of inadequate representation by counsel in the proceedings leading to that prior conviction. The constitutional question of the adequacy of representation together with the question of the truth of the conviction was not decided by the court, but was submitted to the jury for determination. In the present case the constitutional question of the voluntariness

of the plea of guilty was submitted to the jury by an instruction requested by the defendant. The jury was instructed that if they were not convinced beyond a reasonable doubt appellant's plea to the charge of robbery in 1955 was voluntary then they should find the allegation of the prior conviction was untrue.

The court in *Curtis* noted its earlier decision in *People* v. *Coffey,* 67 Cal. 2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], held the use of a constitutionally invalid prior conviction improper and a matter of federal dimension. In *Coffey* the court set out a procedure for pretrial consideration of the constitutionality of the prior conviction by means of a hearing outside the presence of the jury. In *Curtis* the court stated: "In the instant case defendant did not allege inadequate representation—or lack of representation —until his direct testimony following his admission of the prior. There was no objection to the admission and of course no opportunity for a *pretrial* hearing by the court on this issue."

The court in *Curtis* concluded, by using an analogy to the case of *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R. 3d 1205], "California policy clearly requires the question of the constitutionality of a prior conviction to be determined by the court and not by the jury. That the issue arises during and not before trial, so long as the objection is asserted before the case is submitted to the jury, appears to be without significance. Thus, if the defendant attacks the constitutionality of the first prior, . . . a hearing outside the presence of the jury as outlined in *Coffey* will be the appropriate means of determination."[2]

In the present case, as in *Curtis,* the appellant did not question the constitutional validity of the prior conviction until his direct testimony. At this point in the trial appellant alleged he had been threatened with bodily harm if he did not enter a plea of guilty to the burglary charge. The trial court, upon the request of the appellant's trial counsel, submitted the question of the voluntariness of the plea to the prior conviction for determination by the jury. This seems to be in contravention of the rule set down in *Curtis.*

However, we interpret *Curtis* as not applicable to the present case. In *Curtis* the court stated that "so long as the *objection* is asserted before the case is submitted to the jury" it was insignificant that the issue arose during and not before trial. (Italics added.) The phrase used by the court indicates that the testimony of the defendant which suggests constitutional invalidity of the prior conviction is not tantamount to an objection specifi-

---

[2]The decision in *Curtis* was not predicated on the issue of the constitutionality of the prior conviction but was made on other grounds.

cally raised to the admission of evidence to prove the prior conviction. There are no cases subsequent to *Curtis* which discuss the necessity of holding a *Coffey*-type hearing where there has been no specific objection to the constitutional validity of a prior conviction.

We hold under the facts before us it is not proper for appellant on this appeal to attack the integrity of the prior conviction (had some 14 years before), after a plea of guilty entered with the assistance of counsel, when he made no objection to the introduction of the proof of such conviction when it was offered; and later requested the jury be instructed on the matter. It appears this action was a tactical decision to avoid any mention of the prior conviction until a point late in the trial, when it would be unlikely any evidence contrary to such last-minute assertions would be forthcoming. We find no error under these circumstances.

### Sufficiency of the Evidence

A review of the complete record indicates there was substantial evidence, if believed by the jury, upon which to support the judgment of conviction. The appellant was found in the immediate area of a recent burglary. The major item taken in the burglary and a tool later identified as the tool used to gain entrance to the burgled premises were discovered in his car. The only contradiction to the inference of appellant's guilt is his own rather incredible story that he went to the premises with a man known to him only as Frank, and that Frank placed the television in the car and disappeared.

The judgment is affirmed.

Gardner, P. J., and Kerrigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1971.